# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KEITH DOUGLAS CRAIG, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 1:13-cv-07329 |
| TYLER DRALLE, LYDIA DETHROW, NELSON HOLMAN, TYRUS LAZARD, MARLON MCKNIGHT, MARCUS MORTON, JOHN SIEVERS, ANTHONY TAYLOR, SERGIO VALLE, MATTHEW ZEMATIS, | ) ) Honorable Judge Andrea R. Wood ) ) JURY TRIAL DEMANDED ) |
| Defendants. | ) ) |

## THIRD AMENDED COMPLAINT

Plaintiff Keith Douglas Craig, by and through his attorneys, for his Third Amended Complaint, states as follows:

## NATURE OF THE CASE

1. Plaintiff Craig is an inmate of the Illinois Department of Corrections who, while being held at Stateville Correctional Center, was brutally attacked by his cellmate. He brings the present action because the correctional officers and supervisors on duty during the attack failed to take reasonable and timely measures to assist Plaintiff upon hearing his and other fellow inmates' cries for help. As a result of their concerted and deliberate indifference to a serious risk to Plaintiff Craig's safety, Plaintiff sustained serious injuries described below. Plaintiff Craig seeks redress for the violations of his rights under the Eighth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, and under state law, including compensatory and punitive damages, attorneys' fees, and costs.

## JURISDICTION AND VENUE

2. This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the Constitution and laws of the United States, and pursuant to 28 U.S.C. § 1343 because Plaintiff Craig seeks redress for civil rights violations under 42 U.S.C. § 1983.

3. This Court may also exercise supplemental jurisdiction over Plaintiff Craig's state law claims pursuant to 28 U.S.C. § 1367(a) because these claims arise out of the same case or controversy as his federal claims.

4. Venue is proper in the Northern District of Illinois under 28 U.S.C. § 1391(b)(2) because the events or omissions giving rise to Plaintiff Craig's claims asserted herein occurred in this District.

## PARTIES

5. Plaintiff Keith Douglas Craig is an inmate of the Illinois Department of Corrections ("IDOC"). At most relevant times, Plaintiff Craig was held at Stateville Correctional Center ("Stateville") in Crest Hill, Illinois. Plaintiff Craig is presently held at Menard Correctional Center ("Menard") in Menard, Illinois. Plaintiff Craig is a citizen of the United States and Illinois.

6. Each of the following defendants was on duty at Stateville's "F-House" at the time of the assault against Plaintiff Craig (together referred to as "Defendants"), and each is liable in his or her individual capacity.

   a. Defendant Tyler Dralle was a prison official at Stateville holding the title of Correctional Officer. Defendant Dralle was a Correctional Officer assigned to 1 Gallery in F-House at the time of the assault against Plaintiff Craig.

b. Defendant Lydia Dethrow was a prison official at Stateville holding the title of Correctional Officer. Defendant Dethrow was a Correctional Officer assigned to 4 Gallery in F-House at the time of the assault against Plaintiff Craig.

c. Defendant Nelson Holman was a prison official at Stateville holding the title of Correctional Officer. Defendant Holman was a Correctional Officer assigned to 3 Gallery in F-House at the time of the assault against Plaintiff Craig.

d. Defendant Tyrus Lazard was a prison official at Stateville holding the title of Correctional Officer. Defendant Lazard was a Correctional Officer assigned to 2 Gallery in F-House at the time of the assault against Plaintiff Craig.

e. Defendant Marlon McKnight was a prison official at Stateville holding the title of Correctional Officer. Defendant McKnight was a Correctional Officer assigned as an Escort Officer in F-House at the time of the assault against Plaintiff Craig.

f. Defendant Marcus Morton was a prison official at Stateville holding the title of Correctional Officer. Defendant Morton was a Correctional Officer assigned to 3 Gallery in F-House at the time of the assault against Plaintiff Craig.

g. Defendant John Sievers was a prison official at Stateville holding the title of Unit Sergeant. Defendant Sievers was the Unit Sergeant in F-House at the time of the assault against Plaintiff Craig. The Unit Sergeant supervises Correctional Officers on duty at F-House.

h. Defendant Anthony Taylor was a prison official at Stateville holding the title of Correctional Officer. Defendant Taylor was a Correctional Officer assigned to the tower in F-House at the time of the assault against Plaintiff Craig.

  i.  Defendant Sergio Valle was a prison official at Stateville holding the title of Correctional Officer. Defendant Valle was a Correctional Officer assigned as an Escort Officer in F-House at the time of the assault against Plaintiff Craig.

  j.  Defendant Matthew Zematis was a prison official at Stateville holding the title of Correctional Officer. Defendant Zematis was a Correctional Officer assigned to 1 Gallery in F-House at the time of the assault against Plaintiff Craig.

7. At all relevant times and in all their actions, Defendants acted under color of law.

## BACKGROUND

8. On or about April 17, 2012, Plaintiff Craig, an inmate of the IDOC, was transferred from Menard to Stateville. Because Plaintiff Craig was previously convicted of escape from a penal institution, he is categorized as a "Level E" prisoner by IDOC, and is transferred between IDOC facilities more frequently than the regular prison population. At Stateville, Plaintiff Craig's status as a Level E prisoner was well known to Defendants, and he wore special prison clothing that identified him as a Level E prisoner.

9. On his arrival at Stateville, Plaintiff Craig was assigned to Cell 222 in Stateville's F-House with a cellmate, Inmate Jeffrey Mitchell ("Inmate Mitchell").

10. Stateville's F-House is a round building with an armed tower in the center of an open area surrounded by four stories of cells. The four stories are known as 1 Gallery (ground level), 2 Gallery (level 2), 3 Gallery (level 3), and 4 Gallery (level 4), respectively. The four Galleries contain prison cells circling the center tower and open area.

11. Stateville's Cell 222, where Plaintiff Craig was held, is located on 2 Gallery.

12. The tower and open area in the center of F-House provide a 360 degree view of each of the cells located on the four F-House Galleries. From the center tower and open area, as well as from each of the four galleries, Correctional Officers and their supervisors are able to

hear, and from many vantage points see, inmates held in the F-House cells, including Plaintiff Craig's Cell 222.

13. In general, prison guards (including Correctional Officers, Unit Sergeants and Unit Lieutenants) at Stateville's F-House are assigned on any given day to one of three shifts: 7 a.m. to 3 p.m., 3 p.m. to 11 p.m., or 11 p.m. to 7 a.m. On May 7, 2012, 11 such Stateville guards were assigned to F-House for the 7 a.m. to 3 p.m. shift, with one assigned to the central tower and the rest stationed throughout the four galleries and at the building entrance.

14. The F-House Correctional Officers, Unit Sergeant, and Unit Lieutenant are responsible for maintaining order and security and overseeing the safety and health of prisoners and prison staff. In their work, they regularly patrol F-House and supervise and escort prisoners.

## THE ASSAULT AND FAILURE TO RESPOND AND PROTECT

15. Prison officials, including Defendants, have a duty to take reasonable steps to ensure the safety of inmates, including protecting them from harm by another inmate.

16. On the afternoon of May 7, 2012, Plaintiff Craig was in his Cell 222 in Stateville's F-House and was brutally attacked without provocation by his cellmate, Inmate Mitchell. Inmate Mitchell threw Plaintiff to the ground, causing Plaintiff Craig to strike his head on the concrete floor. Inmate Mitchell then continued to beat Plaintiff Craig with his fists and to kick Plaintiff Craig.

17. During the beating, Plaintiff Craig repeatedly screamed for help from the prison authorities, and loudly beat on the cell door.

18. Other inmates heard the beating of Plaintiff Craig and his cries for help. The other inmates began yelling for prison officials to help protect Plaintiff. Some waved shirts and loudly banged their cell doors in order to gain the attention of on-duty prison officials at F-House.

19. The screams for help by Plaintiff Craig and other inmates in F-House were plainly audible throughout F-House, and were heard by Defendants, who were all on-duty at F-House at the time of the assault.

20. The beating of Plaintiff also was visible to Defendants if they looked in the direction of Cell 222.

21. Despite the audible screams for help by Plaintiff and numerous other inmates, and despite the beating being visible to anyone looking in the direction of Cell 222, Defendants concertedly and purposefully ignored Plaintiff's urgent need for protection from Inmate Mitchell and allowed the beating to continue rather than timely responding to, and stopping, the assault.

22. In particular, during the beating, inmates saw some of the Defendants looking at them in response to their cries for help but Defendants did not respond and protect Plaintiff from the ongoing beating.

23. At least twenty minutes passed from the time Plaintiff Craig and other inmates began screaming for help before any prison official on duty at F-House responded to the assault to protect Plaintiff Craig from further injury. At that point, Defendants Zematis and Valle finally responded to the ongoing cries for help.

24. As Defendants Zematis and Valle approached Cell 222, Inmate Mitchell continued to punch Plaintiff Craig, and placed Plaintiff Craig in a headlock.

25. After Defendants Zematis and Valle arrived at Cell 222, Inmate Mitchell was pulled off of Plaintiff Craig, placed into handcuffs, and escorted away from the cell.

26. As a result of the assault, Plaintiff Craig had blood on his face, neck and shoulders and had facial and chest injuries. Plaintiff Craig was so severely beaten that he was

staggering and required assistance to walk. Shortly after being taken from his cell following the assault, Plaintiff Craig suffered a seizure.

27. Due to the severity of his injuries, Plaintiff Craig was transferred by ambulance to St. Joseph Medical Center.

28. Inmates witnessing Plaintiff Craig after the assault while he was being moved by prison officials described him as entirely unconscious and that he looked dead.

29. The excessive, unreasonable and unjustified delay by Defendants in responding to the assault against Plaintiff Craig placed him at substantial risk of serious harm and caused him to suffer substantial injuries that could have been avoided if Defendants had instead immediately responded to the assault and cries for help. In particular, as a result of the assault, and of Defendants' acts and omissions, Plaintiff Craig sustained, at a minimum, a broken nose, lacerations to his face, chest injuries, severe emotional distress, and a head injury of sufficient severity to cause a seizure. In addition, Plaintiff Craig continues to suffer from headaches and permanent facial scarring.

30. Each of Defendants was on duty at F-House at the time of the attack and was responsible for ensuring the safety and welfare of the inmates, including by promptly responding to inmate-on-inmate assaults. The screams and other noises made by Plaintiff Craig and other inmates were audible throughout F-House and were sufficient to alert all Defendants that there was a substantial risk that Plaintiff Craig would be seriously harmed by Inmate Mitchell as a result of the ongoing attack.

## POST-ASSAULT CONCEALMENT

31. Following the assault on Plaintiff Craig, Defendants concealed the fact that they had ignored Plaintiff Craig's, and other inmates', cries for help and had delayed responding to the assault for at least twenty minutes.

32. As a result of head injuries suffered during the assault and his seizure, Plaintiff Craig was unaware that Defendants failed to respond for at least twenty minutes to the assault by Inmate Mitchell despite the audible cries for help. It was only much later that he became aware of the misconduct by Defendants after speaking with other inmates who had witnessed Defendants' failure to respond and provide Plaintiff with protection from Inmate Mitchell.

33. Following his return from treatment at the St. Joseph Medical Center for injuries suffered from the assault, Plaintiff Craig was for a substantial period of time kept away from the general prison population, and thus was delayed in discovering Defendants' failure to respond in a timely fashion to his cries for help.

34. In April 2013, Plaintiff Craig was transferred from Stateville to Menard Correctional Center, where he is currently being held.

35. Following the investigation of the assault, Inmate Mitchell was found guilty of an administrative charge for assaulting Plaintiff Craig.

36. Plaintiff Craig has exhausted his administrative remedies before filing this suit.

## COUNT I

### Eighth Amendment - Violation of 42 U.S.C. § 1983

37. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 36 as if fully alleged herein.

38. Defendants acted deliberately and with deliberate indifference to the substantial risk of serious harm to Plaintiff. Defendants had actual knowledge that Plaintiff was being attacked by Inmate Mitchell on May 7, 2012, but disregarded an excessive risk to Plaintiff's health and safety and failed to take reasonable measures to abate that risk.

39. Each of the Defendants is a "person" within the meaning of 42 U.S.C. § 1983 and at all times relevant to this action acted under the color of law.

40. The acts and omissions of Defendants described herein amounted to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

41. As a direct and proximate result of these violations of Plaintiff's Constitutional rights, Defendants have caused Plaintiff Craig unnecessary and wanton infliction of great pain, mental anguish, and further exacerbated his injuries.

42. Defendants' wrongful acts were willful, wonton, malicious, oppressive, and in conscious disregard of Plaintiff Craig's Constitutional rights.

## COUNT II

### Conspiracy to Violate 42 U.S.C. § 1983

43. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 42 as if fully alleged herein.

44. Defendants, having actual knowledge that Plaintiff was being attacked by Inmate Mitchell on May 7, 2012, knowingly and willfully agreed and conspired with each other to delay in responding to the assault against Plaintiff Craig.

45. Defendants did the acts alleged pursuant to, and in furtherance of, that agreement and furthered the conspiracy by cooperating, encouraging, ratifying, or adopting the acts of others.

46. Each of the Defendants is a "person" within the meaning of 42 U.S.C. § 1983 and at all times relevant to this action acted under the color of law.

47. Defendants' acts in furtherance of the conspiracy described herein amounted to cruel and unusual punishment, in violation of the Eighth and Fourteenth Amendments to the United States Constitution.

48. As a direct and proximate result of these violations of Plaintiff's Constitutional rights, Defendants have caused Plaintiff Craig unnecessary and wanton infliction of great pain, mental anguish, and further exacerbated his injuries.

49. Defendants' intentional agreement to commit, and commission of, these wrongful acts was willful, wonton, malicious, oppressive, and in conscious disregard of Plaintiff Craig's rights.

## COUNT III

### Failure to Protect Under Illinois Law

50. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 36 as if fully alleged herein.

51. Under Illinois law, prison officials, including Defendants, have a general duty of care to inmates. Defendants have a duty to use ordinary and reasonable care for the preservation of inmate health and life, and this duty includes protecting Plaintiff Craig from assaults by other inmates.

52. By the acts and omissions of Defendants as set forth above, Defendants breached their duty under Illinois law to Plaintiff Craig.

53. Defendants' conduct was contrary to their employment duties at Stateville and was for a purpose unrelated to their employment.

54. Defendants' wrongful acts were knowing, willful, wonton, malicious, oppressive, and in conscious disregard of Plaintiff Craig's rights under Illinois law.

55. As a result of Defendants' acts and omissions, Defendants have directly and proximately caused Plaintiff Craig unnecessary and wanton infliction of great pain, mental anguish, and further exacerbated his injuries.

## COUNT IV

### Infliction of Emotional Distress Under Illinois Law

56. Plaintiff repeats and re-alleges the preceding paragraphs 1 through 36 as if fully alleged herein.

57. The acts and omissions of Defendants as set forth above were extreme and outrageous. Defendants negligently, intentionally, and willfully caused, or acted with knowledge of the high probability that the conduct would cause, emotional distress to Plaintiff Craig.

58. Defendants also breached their duty under Illinois law to exercise ordinary and reasonable care to preserve the health and life of Plaintiff Craig.

59. Defendants' conduct was contrary to their employment duties at Stateville and was for a purpose unrelated to their employment.

60. As a result of Defendants' acts and omissions, Defendants have directly and proximately caused Plaintiff Craig severe emotional distress, resulting in injury to his mind and body, including mental anguish, severe pain, and emotional suffering.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Keith Douglas Craig demands judgment against Defendants, jointly and severally, awarding him:

1. Compensatory damages for all actual and direct losses and expenses Plaintiff has incurred and will incur as a result of Defendants' actions, the exact amount to be proven at trial, together with prejudgment interest and costs;

2. An award of punitive damages to punish Defendants' wrongful conduct and deter future wrongful conduct;

3. Plaintiff's costs and disbursements of this action, including reasonable attorneys' fees, costs and expenses; and

4. Such further relief as the Court deems just, proper, and equitable.

## REAFFIRMATION OF JURY DEMAND

Plaintiff hereby reaffirms his demand for trial by jury of this matter.

Respectfully submitted,

Plaintiff Keith Craig

Dated: October 13, 2016

By: /s/ Allison W. Reimann
One of the Attorneys for Plaintiff

Michael P. Doss
Allison W. Reimann
Jessica S. Rothenberg
Jessica B. Beringer
SIDLEY AUSTIN LLP
One South Dearborn
Chicago, IL 60603
(312) 853-7000
(312) 853-7036 (fax)

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 13, 2016, I electronically filed the foregoing document, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Allison W. Reimann*
Allison W. Reimann
